IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                 Case No. 6:16-cr-10134-JTM-1

JAMES RAY LAWSON,

        Defendant.

## MEMORANDUM AND ORDER

This matter came before the court on June 21, 2017, for an evidentiary hearing on the defendant's motions to suppress evidence (Dkts. 18, 19). The court took the motions under advisement at the conclusion of the hearing.

### I. Facts

The court finds the following facts from the evidence presented. At around 10:45 p.m. on September 17, 2016, Kansas Highway Patrol Trooper James McCord was on duty traveling east bound on I-70 in Ellis County, Kansas. McCord saw a car traveling in the same direction a short distance ahead of him in the right-hand (non-passing) lane. McCord saw the car's passenger side cross over the right "fog line," the boundary marker for the right lane. As McCord continued to draw closer, he saw the car again drift toward the shoulder, with its passenger side tires traveling on top of the fog line.

McCord believed the driver had violated K.S.A. § 8-1522(a), which requires that a vehicle "be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be

made with safety." As the trooper conceded at the hearing, a video recording of the incident from his patrol car does not clearly show a violation. That is due largely to the poor quality of the video as compared to what McCord could see in person. The court finds credible the officer's testimony that the car crossed over the line and subsequently straddled it. That testimony was partially corroborated by the video, which showed that at times the defendant's car was a significant distance from the center lane line and was on or near the right fog line. (It was also corroborated by defendant's statements captured on video, in which he indicated his weaving was due to a belief that the patrol car coming up behind him was a drunk driver.)

McCord turned on his emergency lights and stopped the car, a Ford Fiesta, which was driven by defendant James Lawson. Lawson was the sole occupant. McCord approached, explained the reason for the stop, and asked for defendant's driver's license and proof of insurance. Defendant indicated the car had been rented by his daughter and produced a rental agreement in her name. He told the trooper he had an identification card and produced it. The card was from Wisconsin, although defendant said he now lived in Kentucky. The trooper asked defendant about his travel. In response to the trooper's questions, defendant said he was coming back from a couple of days in Las Vegas. McCord asked if he had a valid license; defendant said no. Defendant indicated his license had been suspended for failure to pay child support "in the nineties." McCord informed defendant he might be arrested for driving on a suspended license. McCord returned to his patrol car to run a check on defendant's identification and license.

The dispatcher informed McCord that defendant's Wisconsin driver's license had expired in 1988. McCord returned to the Fiesta, had defendant step out, and informed him he was being placed under arrest. McCord handcuffed defendant and placed him in the front seat of the patrol car. He told defendant the Fiesta would be towed and that he would have to inventory its contents. At the suppression hearing, McCord testified that the Kansas Highway Patrol has a policy of towing vehicles off the interstate in circumstances like these, where the driver is arrested, and the policy requires taking an inventory of the vehicle's contents. McCord proceeded to look through the car. In a laundry bag in the trunk, he found two packages of marijuana totaling about two pounds.

McCord returned to the patrol car, told defendant he was also being arrested for possession of marijuana with intent to distribute, and informed defendant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), including the right to remain silent and the right not to answer questions, which he could exercise at any time.[1] When asked if he understood these rights, defendant said, "Yeah." McCord then asked defendant about his travel, noting a receipt from the car indicated he had been in Utah. Defendant confirmed he had been to Utah and said he went from there to Las Vegas. When McCord said, "Oh, you went to Vegas?" defendant responded, "Yep, that's all I'm saying." McCord said "Okay" and stopped asking questions. After a delay of about ten seconds, defendant said, "I really … thought you were a drunk driver because you

---

[1] McCord asked the defendant a few questions after placing him under arrest but before giving him *Miranda* warnings. The court will grant defendant's motion insofar as it seeks to suppress evidence of defendant's responses to questions from the point he was arrested until *Miranda* warnings were given.

were coming up so fast." In response, McCord said he saw defendant's car go over the fog line before he got close. Defendant asked if he could smoke a cigarette, since he was going to jail, but McCord said he couldn't allow it.

McCord returned to defendant's car, taking photos of items in the trunk before retrieving them. Inside a small bag in the trunk, McCord found a zip lock bag containing what appeared to be methamphetamine. McCord put the bag in his patrol car, telling defendant as he did so, "You also got about a pound and a half of meth in there." Defendant denied knowledge of it. McCord told him he was going to jail for that item as well, challenging defendant's lack of knowledge, saying the meth was right next to defendant's other stuff. Defendant again denied knowledge, indicating someone else had put the "weed" in the trunk and had not told him anything about methamphetamine. McCord told defendant he would likely be federally indicted on the meth. Defendant said "I know" and "all right." McCord returned to defendant's car and searched through the passenger compartment, taking photos as he did so.

When McCord returned to the patrol car, defendant volunteered that he didn't know the methamphetamine was there. McCord received a phone call from Doug Carr, a trooper assigned to the DEA task force. McCord recounted the incriminating circumstances of the stop over the phone in defendant's presence. In the course of that conversation, McCord said, "Naw, he doesn't want to talk," adding that defendant knew about the weed in the trunk but not the meth. When McCord mentioned during the call that defendant had not had a license since about 1987, defendant jokingly added that "Reagan was the last President."

4

After the call concluded, defendant again initiated conversation, asking McCord whether he had gotten his stuff out of the trunk, including his cigarettes. Defendant later asked McCord whether he could write down his daughter's contact information from his phone. After some additional conversation, McCord asked defendant if he wanted to help himself out. After defendant asked how, the two engaged in an extended conversation of the circumstances and what might happen, including the possibility of doing a controlled delivery. Defendant made a number of incriminating statements in response to questions from the trooper.

Defendant's car was towed to Troop D Headquarters in Hays. McCord followed along behind with defendant. At the headquarters, defendant spoke with TFO Carr by telephone, with McCord present as well. Carr asked defendant if he had been informed of his *Miranda* rights. Defendant said he had. Carr then asked if defendant wanted to talk, and defendant said he did.  Defendant spoke to Carr for about twenty minutes.

**II. Discussion**

1. *Traffic stop*. Defendant contends the initial traffic stop was unconstitutional. Dkt. 18 at 3. "Whether a traffic stop is valid under the Fourth Amendment turns on whether this particular officer had reasonable suspicion that this particular motorist violated any of the multitude of applicable traffic and equipment regulations of the jurisdiction." *United States v. Hunter*, 663 F.3d 1136, 1142 (10th Cir. 2011) (citation and punctuation omitted).  The court finds that the trooper had reasonable suspicion to believe defendant had violated K.S.A. § 8-1522(a) by crossing over the fog line of the highway. The court finds the officer's testimony credible that he saw the defendant's car

cross over the fog line. The evidence showed there were no obstacles or other conditions that would have made it impracticable for defendant to maintain his lane. The evidence also showed the trooper did nothing that would have caused a reasonable driver in defendant's circumstance to veer onto the shoulder. The court thus concludes that the initial traffic stop was reasonable under the Fourth Amendment.

2. _Search of the vehicle_. Defendant contends the subsequent search of the vehicle was also unconstitutional. Dkt. 18 at 3. The court concludes, however, that the trooper engaged in a lawful inventory search.

"An inventory search is a well-defined exception to the warrant requirement of the Fourth Amendment." _United States v. Killblane_, 662 F.App'x 615, 617 (10th Cir. 2016) (quoting _United States v. Haro-Salcedo_, 107 F.3d 769, 772 (10th Cir. 1997)). The search is an administrative procedure designed to produce an inventory of an arrestee's personal belongings. _Haro-Salcedo_, 107 F.3d at 773. It has three purposes: protection of the owner's property, protection of the police against claims of lost or stolen property, and protection of the police from potential danger. _Id_. at 772. To be valid, an inventory search must be conducted according to standardized procedures and must not be a ruse for general rummaging in order to discover incriminating evidence. _Id_. at 772-73.

Trooper McCord testified that the Kansas Highway Patrol had a policy of towing automobiles from the interstate and inventorying the contents when the driver of the car was arrested. While the Government's evidence concerning the policy could have been more explicit, the evidence supports a finding that McCord engaged in a search of the vehicle and its contents pursuant to a departmental policy setting standardized

criteria rather than for the purpose of rummaging for evidence. *See Colorado v. Bertine*, 479 U.S. 367, 372-73 (1987) ("there was no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation"). McCord's testimony concerning the department's policies was credible. Additionally, McCord can be heard on tape telling the defendant when he was arrested that the car would have to be towed and he (McCord) would have to inventory the contents. The officer's actions thereafter, including taking photographs of items in the car, were consistent with an inventory search. Finally, the purposes of an inventory search justified McCord's actions, as the car was about to be towed and impounded, and the police would have been subject to potential claims for lost or stolen property. The court thus finds that the initial search resulting in the discovery of marijuana was part of a valid inventory search. Once the officer discovered marijuana in the trunk, he had probable cause to search the remainder of the car and its contents. *See United States v. Ross*, 456 U.S. 798, 825 (1982) (once probable cause is established, officer may search entire vehicle and containers therein).

3. *Invocation of right to remain silent*. The evidence showed that McCord gave the defendant *Miranda* warnings following his arrest. The evidence also showed that defendant understood his rights and knowingly and voluntarily waived them and chose to speak to the trooper. Defendant does not argue otherwise. Rather, defendant contends that when he said to McCord, "That's all I'm saying," it was an invocation of the right to remain silent, and that McCord's continued questioning requires suppression of defendant's statements after that point. Dkt. 19 at 2. The Government

says in response there is "no reason to believe that when the defendant made that statement he was invoking his right to remain silent." Dkt. 23 at 8.

If a defendant invokes the right to remain silent at any time, police questioning must cease at that point. *Miranda v.* Arizona, 384 U.S. 436, 473-74 (1966). *See also Michigan v. Mosely*, 423 U.S. 96, 103 (1975) (the right to cut off questioning must be "scrupulously honored"). But a defendant's invocation of the right to remain silent must also be clear and unambiguous. *See Berghuis v. Thompkins*, 560 U.S. 370, 380-83 (2010); *United States v. Calvetti*, 836 F.3d 654, 661 (6th Cir. 2016); *United States v. Rambo*, 365 F.3d 906, 910 (10th Cir. 2004).

Defendant's response when he was asked whether he went to Las Vegas – "Yep. That's all I'm saying" – was an ambiguous assertion. It could be construed as a desire not to delve further into the particular subject asked about – a variation of "what happens in Vegas stays in Vegas" – rather than a desire to refrain from answering any questions at all about the drugs in his car. The statement was in the present tense, which adds to uncertainty over whether it was meant to apply to additional questions about other subjects or future questions. The addition of "that's all I'm saying" to an answer can also be used to mean that the initial statement is limited in importance or scope.

It is true that the defendant might have intended his statement to convey that he did not want to answer any more questions, and it could be construed that way, but it was not a clear and unambiguous statement to that effect. *Cf. United States v. McCarthy*, 382 F. App'x 789, 792, 2010 WL 2413024 (10th Cir. 2010) (request was clear when defendant said he did not want "nothing to say to anyone"); *United States v. Rambo*,

8

(invocation clear when officer asked defendant, "Do you want to talk to me about this stuff?" and defendant responded, "No.").

As the Supreme Court noted in *Berghuis*, "[t]here is good reason to require an accused who wants to invoke his or her right to remain silent to do so unambiguously. A requirement of an unambiguous invocation of *Miranda* rights results in an objective inquiry that avoids difficulties of proof and provides guidance to officers on how to proceed in the face of ambiguity." *Berghuis*, 560 U.S. at 381 (citation and punctuation marks omitted). If ambiguous statements could require police to end interrogations, they would be required to make decisions about an accused's unclear intent and face the consequences of suppression if they guess wrong. *Id.* at 382. At the same time, suppression of a voluntary confession in these circumstances "would place a significant burden on society's interest in prosecuting criminal activity." *Id.* In this instance, the defendant's statement did not clearly and unambiguously invoke the right to remain silent. The court thus concludes that further questioning by the trooper was not unlawful. *Id.* at 381 ("If an accused makes a statement concerning the right to counsel 'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation … or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights").

Even if defendant's statement was an unambiguous invocation of the right to remain silent, the evidence shows defendant voluntarily and knowingly waived that right when he reinitiated conversation with the trooper. The recording of the stop indicates McCord briefly refrained from asking questions after defendant made the

statement, but defendant then reinitiated the conversation by volunteering that he had thought the trooper was a drunk driver when his car was approaching from behind. In doing so, he objectively evinced a willingness to engage in further discussion of the investigation. Defendant, who had previously been given *Miranda* warnings, knowingly and intelligently gave up his right to remain silent when he reinitiated conversation with the trooper and proceeded to voluntarily answer questions without any indication of doubt or hesitation. *See United States v. Santistevan*, 701 F.3d 1289, 1294 (10th Cir. 2012) ("It is well settled that a defendant, who has previously invoked the right to counsel, may change his mind and speak with police so long as the defendant '(a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked.'") (citations omitted). Insofar as defendant argues that his statements to the trooper were not voluntary, based on factors such as the trooper's suggestions of leniency if he cooperated or his discussion of possible penalties for the offense, the court rejects that argument as well. The trooper made no specific promises and did not engage in any forms of improper coercion that would have overcome defendant's free will. *See United States v. Varela*, 576 F.App'x 771, 778 (10th Cir. 2014). This was a relatively brief detention in which the defendant readily talked with the officer, who remained polite at all times. The defendant is a middle-aged man who appears to be of at least average intelligence, and he undoubtedly understood that cooperation with law enforcement could lessen the potential penalty for an offense. Based on the totality of circumstances, the court finds the defendant's statements to the officer were voluntary.

**IT IS THEREFORE ORDERED** this 14th day of July, 2017, that defendant's Motion to Suppress (Dkt. 18) is DENIED, and defendant's Motion to Suppress Statements (Dkt. 19) is GRANTED IN PART and DENIED IN PART. The motion is granted with respect to defendant's responses from the point of arrest until *Miranda* warnings were given. The motion is denied in all other respects.

                       ___ s/ J. Thomas Marten_____
                       J. THOMAS MARTEN, JUDGE